DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Richard E. Donley, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his application for wage-loss compensation and ordering the commission to issue a new order finding that he is entitled to said compensation. In the alternative, relator argues that the commission abused its discretion by conducting a hearing on his wage-loss application in the first instance because his self-insured employer, The Gradall Company ("Gradall"), had already indicated that wage-loss compensation was payable.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
 {¶ 3} Relator argues that the magistrate erred in finding that the April 18, 2002 letter approving his request for wage loss was sent due to a "clerical error," so as to be subject to modification pursuant to State ex rel. Baker Material HandlingCorp. v. Indus. Comm. (1994), 69 Ohio St.3d 202. Relator asserts that nothing in the July 31, 2002 letter from Gradall's representative, or anywhere else in the record, indicates the error was "clerical" in nature. He claims the situation seems to be more of a difference in judgment between the prior and latter claims representatives. However, relator presents no evidence suggesting that there was a difference of opinion between claims representatives. To the contrary, the July 31, 2002 letter states that the April 18, 2002 letter was sent in error. In plain terms, that statement would indicate that the letter was sent by mistake, and it does not suggest that there was a change of opinion between claims representatives. Buttressing Gradall's position that it mistakenly sent the letter indicating it was going to pay the compensation is that it never did, in fact, pay relator any wage-loss compensation thereafter. Furthermore, we also agree with the magistrate's opinion that Gradall's April 18, 2002 letter did not act as an adjudication so as to trigger the application of res judicata.
 {¶ 4} Relator further argues that the magistrate erred in her decision on the merits of his wage-loss application. However, relator presents no new arguments in this respect and fails to identify how the magistrate's reasoning was in error. Our review of the magistrate's analysis reveals no error. Therefore, this argument is not well taken.
 {¶ 5} Relator also asserts that the magistrate erred in finding of fact number eight, in which the magistrate found that relator's position of employment on the date of injury was inspection/receiving and final. Relator points out that his position on the date of the injury was actually final assembly. Relator's testimony before the commission, the affidavit from Ronald Burton, relator's employee skills history, and relator's applications for wage-loss compensation provide conflicting evidence on this issue. Regardless, because the commission's and magistrate's decisions were also based on other independent grounds, we need not address any error in this respect.
 {¶ 6} After an examination of the magistrate's decision, an independent review of the record, pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
Lazarus, P.J., and Petree, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Richard E. Donley, : Relator, : v. : No. 03AP-400 Industrial Commission of Ohio : (REGULAR CALENDAR) and The Gradall Company, : Respondents. :
 MAGISTRATE'S DECISION Rendered on October 31, 2003 IN MANDAMUS {¶ 7} Relator, Richard E. Donley, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for wage loss compensation and ordering the commission to issue a new order finding that he is entitled to said compensation. In the alternative, relator argues that the commission abused its discretion by conducting a hearing on his wage loss application in the first instance since his self-insured employer, The Gradall Company ("Gradall"), had already indicated that wage loss compensation was payable.
 Findings of Fact {¶ 8} 1. Relator sustained a work-related injury on August 8, 2000, and his claim has been allowed for: "partial amputation right thumb."
 {¶ 9} 2. At the time of his injury, relator was earning $14.84 per hour and his average weekly wage was $805.23, based upon a 40 hour week plus an average of approximately nine and one-half hours of overtime paid at time and a half.
 {¶ 10} 3. Following his injury, relator received intermittent periods of temporary total disability ("TTD") compensation and wage loss compensation. Following a period of TTD compensation that ended September 24, 2001, relator requested payment of working wage loss compensation beginning September 25, 2001. The request was submitted to Gradall's representative, Compensation Consultants, Inc. ("CCI").
 {¶ 11} 4. Relator did not receive a reply from CCI and filed a C-86 motion with the commission. Thereafter, on April 18, 2002, CCI notified the Ohio Bureau of Workers' Compensation ("BWC") that it had approved relator's request for wage loss.
 {¶ 12} 5. Subsequently, on July 31, 2002, CCI informed the BWC that its April 18, 2002 letter had been sent in error and requested a hearing regarding relator's request for wage loss compensation.
 {¶ 13} 6. From a medical standpoint, relator's restrictions from September 25, 2001 through November 6, 2001, were that he not use his right hand As of November 6, 2001, relator's treating physician Ira E. Richterman, M.D., determined that relator could increase his activities as tolerated without any restrictions or limitations.
 {¶ 14} 7. As of February 12, 2002, Dr. Richterman restricted relator to working in a warm environment above 50 degrees because hypersensitivity returned to the tip of relator's thumb after exposure to cold weather. Dr. Richterman indicated that relator could have only very limited exposure to cold on a periodic basis. Furthermore, Dr. Richterman restricted relator from performing jobs requiring fine dexterity skills with fine manipulation.
 {¶ 15} 8. With regard to relator's employment, on the date of his injury, relator was employed in Inspection/Receiving and Final. When TTD compensation was terminated on September 24, 2000, relator had returned to work in a position designated as Final Assembly. On July 16, 2001, relator voluntarily bid into a shipping job which was a temporary job paying $13.75 per hour. At the time that relator bid into this shipping job, other jobs were available that paid more; however, relator was not interested in those jobs and did not bid into them. On February 11, 2002, relator was bumped out of the shipping job and returned to a job in Inspection/Receiving and Final. Relator began making $14.84 per hour again in this position where he worked until April 2002, when he was bumped off the job. On April 22, 2002, relator's pay was increased to $15.26 per hour and he was classified as an Inspector B under a new union contract; however, relator worked light duty in parts and service while receiving his pay at the Inspector B rate.
 {¶ 16} 9. Relator's application for wage loss compensation was heard before a district hearing officer ("DHO") on October 21, 2002, and resulted in an order denying his motion in its entirety. With regard to relator's assertion that Gradall could not challenge his receipt of wage loss compensation because Gradall had sent the BWC a letter stating that it intended to pay the wage loss compensation, the DHO stated as follows:
The claimant contends that the payment of wage loss is res judicata or waived as the Self-Insured Employer's repre-sentative issued a letter stating that wage loss would be paid.
This contention is not well taken.
The Self-Insured Employer never paid the wage loss at issue. Also, the Self-Insured Employer through counsel explained that the letter was sent in error. The District Hearing Officer finds that this clerical error is not binding.
The District Hearing Officer finds that this matter is not res judicata as there has been no formal adjudication of this issue.
The claimant is correct in that the Self-Insured Employer is the initial processor of requests. However, only the Industrial Commission has authority to adjudicate contested matters.
The claimant's reliance on State ex rel. BakerMaterial Handling Corporation v. IndustrialCommission [(1994), 69 Ohio St.3d 202] is misplaced. This case pertains to the certification of the claim and what constitutes formal recognition of a condition. The case does not pertain to the payment of wage loss.
 {¶ 17} 10. Regarding the issue of the entitlement to wage loss compensation, the DHO stated as follows:
It is the order of the District Hearing Officer that the request for Working Wage Loss Compensation from 09/25/2001 through 10/21/2002 is specifically denied, as the claimant has not met his burden of proving compliance with the wage loss rules and regulations.
The District Hearing Officer finds that the claimant has voluntarily limited his income by bidding into a job which pays less money and by working less than the hours available.
The claimant testified that when he bid into the shipper job there were other jobs available which paid more money; however, he was not interested in those jobs.
Further, during the periods of wage loss when restrictions were in effect there was no limitation on the number of hours worked.
The claimant argues that he was not permitted to work overtime. However, there has been no proof offered to show that overtime was available for his position. Nor has it been shown that the lack of overtime was due to the injury in this claim rather than due to economic reasons.
Further, the claimant did not work a regular 40 hour work week on a regular basis in any event.
The claimant was scheduled to work from 7:00 a.m. to 3:30 p.m. each day. The claimant testified that he often left work early to attend physical therapy and that he made no effort to schedule his physical therapy after work. The District Hearing Officer finds that it is incongruent to argue that overtime was not offered when the claimant was not working a full work week. The District Hearing Officer also finds that the claimant has not made an effort to try to mitigate his wage loss.
* * *
Finally, there was testimony at hearing that the claimant returned to final assembly on or about 02/10/2002 which is the position the claimant was injured on. There is an employee history on file which reflects the change in job classification.
The claimant testified that he was forced to leave his job as a shipper due to cut backs and that he went to final inspection until sometime in April 2002 when he was bumped again. The claimant contends that final assembly is not the same as "Inspection, receiving final", the classification on his employment history.
The claimant has not provided any proof to contradict the employment history on file.
Once the claimant returned to work at his former job classification he was not entitled to wage loss. Per the claimant's own testimony, the further changes in his position were due to reasons other than his injury; to wit, he was "bumped' out of the position.
For the foregoing reasons, the claimant is not entitled to wage loss for the period requested from 09/25/2001 through 10/21/2002.
 {¶ 18} 11. Relator filed an appeal and the matter was heard before a staff hearing officer ("SHO") on January 10, 2003. A transcript of the proceedings before the SHO are contained in the record at pages 63 through 75 for the court's review. The SHO affirmed the prior DHO order denying the request for wage loss compensation as follows:
In affirming the District Hearing Officer's decision to deny the payment of wage loss compensation from 09/25/2001 through 10/21/2002 inclusive, this Staff Hearing Officer has relied upon the lack of medical proof of restrictions due to the allowed condition from 11/17/2001 through 02/11/2002, inclusive, the claimant's testimony at hearing (transcript p. 32) that he did in fact work some overtime while working in shipping, the failure of the claimant to bid into a higher paying job which was available, and the evidence as cited by the District Hearing Officer.
Based upon said proof, this Staff Hearing Officer finds the claimant's alleged wage loss from 09/25/2001 through 10/21/2002, inclusive, was not due solely to the allowed condition.
 {¶ 19} 12. Relator's further appeal was refused by order of the commission mailed March 1, 2002.
 {¶ 20} 13. Thereafter, relator filed the instant mandamus action in this court.
 Conclusions of Law {¶ 21} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 22} As stated previously, relator raises two arguments: (1) res judicata bars Gradall from challenging relator's entitlement to wage loss compensation; and (2) the commission abused its discretion by denying relator's motion for wage loss compensation. For the reasons that follow, this magistrate finds that both of relator's arguments lack merit.
 {¶ 23} The doctrine of res judicata operates to preclude the relitigation of any point of law or fact which was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction. See Consumers' Counsel v. Pub.Util. Comm. (1985), 16 Ohio St.3d 9. Res judicata does apply to administrative actions, including those heard by the commission, because the commission acts as a tribunal of competent jurisdiction. See State ex rel. Crisp v. Indus. Comm. (1992),64 Ohio St.3d 507. However, while a self-insured employer has the authority to initially adjudicate undisputed claims, can certify a claim for allowed conditions, and can pay the various forms of compensation without an adjudication before the commission, self-insured employers are not tribunals of competent jurisdiction.
 {¶ 24} Relator cites Ohio Adm. Code Chapter 4125 and State exrel. Baker Material Handling Corp v. Indus. Comm. (1994),69 Ohio St.3d 202, in support of his argument. Ohio Adm. Code4125-1-01(G) provides as follows:
Where the employer of record is a self-insuring employer it shall:
(1) Adjudicate the initial application for wage loss compensation and inform the claimant of its decision no later than thirty days after a request for wage loss compensation is received;
(2) Adjudicate all issues which arise with respect to the claimant's ongoing entitlement to wage loss compensation and inform the claimant of its decision in no later than thirty days after the issue arises; and
(3) Ensure that a copy of any decision described in paragraphs (G)(1) and (G)(2) of this rule is filed with either the bureau of worker's [sic] compensation or the industrial commission for placement in the claim file.
(Emphasis sic.)
 {¶ 25} Relator admits that Gradall did not adjudicate his application for wage loss compensation within the 30 day time frame provided by the rule. Relator also does not contest the fact that Gradall never paid him any wage loss compensation at all. However, relator contends that Gradall's letter to the BWC dated April 18, 2002, indicating that it was not going to contest relator's eligibility for wage loss compensation, constitutes an adjudication and that Gradall is bound by the doctrine of res judicata to pay him wage loss compensation.
 {¶ 26} Contrary to relator's assertion, prior to the hearing before the commission, there was no adjudication of his application for wage loss compensation and Gradall never informed him that it was going to pay the compensation. Instead, although Gradall did notify the BWC that it intended to pay relator wage loss compensation, Gradall sent a second letter to the BWC indicating that the April 18, 2002 letter had been sent in error. Furthermore, as stated previously, the record reveals that Gradall never paid relator any wage loss compensation.
 {¶ 27} Relator also cites Baker and asserts that it is further evidence that Gradall did actually adjudicate his application for wage loss compensation and should not be permitted to challenge that award at this time. However, inBaker, the Ohio Supreme Court noted that state-fund employers and self-insured employers stand on different footing with regard to the processing and adjudication of employee's workers' compensation claims. The court noted that self-insuring employer's not only pay compensation directly to injured employees, but, also, adjudicate their claims for benefits in the absence of a dispute. Furthermore, the court cited R.C. 4123.52
which applies to the jurisdiction of the commission and noted that there was no comparable statute or rule which applies to self-insured employers. The court went on to state:
* * * In order for a self-insured employer to secure a modification of its prior award, it must invoke the continuing jurisdiction of the commission upon a showing of [(1) new and changed conditions subsequent to the initial order, (2) fraud, or (3) clerical error].
Id. at 207.
 {¶ 28} In the present case, Gradall indicated that the April 18, 2002 letter was sent due to a clerical error and one of the three circumstances was satisfied. As such, this argument of relator is not well taken.
 {¶ 29} Relator also contends that the commission abused its discretion by denying his request for wage loss compensation.
 {¶ 30} Entitlement to wage loss compensation is governed by R.C. 4123.56(B) which provides as follows:
Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than the employee's former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, the employee shall receive compensation at sixty-six and two-thirds per cent of the employee's weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks.
 {¶ 31} In order to receive workers' compensation, a claimant must show not only that a work-related injury arose out of and in the course of employment, but, also, that a direct and proximate causal relationship exists between the injury and the harm or disability. State ex rel. Waddle v. Indus. Comm. (1993),67 Ohio St.3d 452. This principle is equally applicable to claims for wage loss compensation. State ex rel. The Andersons v.Indus. Comm. (1992), 64 Ohio St.3d 539. As noted by the court inState ex rel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118, a wage loss claim has two components: a reduction in wages and a causal relationship between the allowed condition and the wage loss.
 {¶ 32} Ohio Adm. Code 4125-1-01(D) provides that the claimant is solely responsible for and bears the burden of producing evidence regarding their entitlement to wage loss compensation. In determining whether or not a claimant has made a good faith effort to search for suitable employment which is comparably paying work, the commission is permitted to consider any voluntary action on the part of the claimant which limits the claimant's present earnings.
 {¶ 33} In the present case, the commission specifically found that, at a time when better paying jobs were available with his current employer, relator specifically chose to accept positions which paid less than he had been making. Relator does not contest that those other higher paying jobs were within his physical restrictions. Further, the commission noted that, during periods of wage loss when restrictions were not in effect, there was no limitation on the number of hours worked. The commission found that relator did not submit proof that he was not permitted to work overtime, nor had he shown that the lack of overtime was due to the injury in his claim rather than due to economic conditions. Further, the commission noted that relator did not work a regular 40 hour work week on a regular basis. The commission notes that relator's work day was from 7 a.m. to 3:30 p.m., but that he testified that he often left work early to attend physical therapy instead of scheduling his physical therapy appointments after work.
 {¶ 34} Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. Teece, supra. Furthermore, it is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's decision. State ex rel. Pass v. C.S.T. Extraction Co. (1996),74 Ohio St.3d 373. The commission's order finding that relator had voluntarily limited his earnings is supported by some evidence in the record and relator has not demonstrated the commission abused its discretion.
 {¶ 35} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion by conducting a hearing regarding relator's application for wage loss compensation as the letter from his employer did not constitute res judicata on the issue of entitlement to wage loss compensation. Furthermore, relator has not demonstrated that the commission abused its discretion in ultimately denying his application for wage loss compensation. As such, this court should deny relator's request for a writ of mandamus.