OPINION
{¶ 1} Appellant, City of Cleveland ("City"), appeals from the judgment of the Franklin County Court of Common Pleas affirming the order of appellee, Ohio Liquor *Page 2 
Control Commission ("Commission"), in which the Commission affirmed the order of the Ohio Department of Commerce, Division of Liquor Control ("Division"), granting an application by appellee, Nader Assad ("Assad"), to transfer the ownership and location of C-2 and C-2x liquor permits.
 {¶ 2} In October 2004, Assad applied to the Division to transfer the ownership and location of C-2 and C-2x liquor permits from Trend Cross Enterprises, Inc., dba Capital Beverage St Clair, to Assad, dba One Stop Market. Assad's convenience store, One Stop Market, is located at 3744 East 144th Street, Cleveland, Ohio. The City objected to Assad's application. On April 14, 2005, the Division overruled the City's objection based on the City's failure to present evidence or testimony as to why the transfer should not be granted.
 {¶ 3} The City appealed to the Commission. At the hearing before the Commission on March 14, 2006, the City argued that the doctrine of res judicata barred Assad's application. Specifically, the City claimed that the Commission's denial, on April 30, 2004, of a previous application to transfer the same permits to Assad's corporation, M.U.S.A., Jr. 3744, Inc. ("M.U.S.A."), dba One Stop Market, precluded Assad's application. The City called no witnesses at the Commission hearing. The City's only evidence, admitted over Assad's objections, was a transcript of the Commission's April 20, 2004 hearing on the previous application. Assad, on the other hand, called four witnesses who live in the vicinity of the One Stop Market and who testified about the neighborhood, including changes to the neighborhood in the two years since the previous Commission hearing. In an order mailed March 31, 2006, the *Page 3 
Commission affirmed the Division's decision overruling the City's objection and ordered the Division to continue processing Assad's application.
 {¶ 4} Pursuant to R.C. 119.12, the City appealed to the Franklin County Court of Common Pleas, which affirmed the Commission's order on January 23, 2007. The City then timely appealed to this court and now raises the following single assignment of error:
 The Common Pleas Court Abused Its Discretion By Affirming The Order Of the Liquor Control Commission Because The Order Is Not Supported By Reliable, Probative, And Substantial Evidence And Is Not In Accordance With Law.
 {¶ 5} In an appeal, pursuant to R.C. 119.12, the common pleas court reviews the entire record to determine whether the administrative agency's order is supported by reliable, probative, and substantial evidence and is in accordance with the law. Univ. of Cincinnati v.Conrad (1980), 63 Ohio St.2d 108, 110-111. The Ohio Supreme Court has defined reliable, probative, and substantial evidence as follows:
 * * * "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. * * * "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. * * * "Substantial" evidence is evidence with some weight; it must have importance and value.
(Footnotes omitted.) Our Place, Inc. v. Ohio Liquor Control Comm.
(1992), 63 Ohio St.3d 570, 571. In applying this standard, the court must give due deference to the agency's resolution of evidentiary conflicts. Conrad at 111.
 {¶ 6} On appeal to this court, the standard of review is more limited. In reviewing the court of common pleas' determination that the Commission's order was *Page 4 
supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the court abused its discretion.Roy v. Ohio State Med. Bd. (1992), 80 Ohio App.3d 675, 680. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. However, on the question of whether the Commission's order was in accordance with the law, this court's review is plenary. Univ. Hosp.,Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.
(1992), 63 Ohio St.3d 339, 343.
 {¶ 7} Here, after considering the testimony presented at the March 14, 2006 hearing, as well as at the April 20, 2004 hearing relating to the prior application, the trial court concluded that reliable, probative, and substantial evidence supported the Commission's order and that the order was in accordance with law. The court stated: "The more recent evidence is more probative on the determinative issues and when combined with other evidence, the totality of the evidence is favorable to appellee Assad." Also, in reliance on the Fifth District Court of Appeals' opinion in Moffa v. Liquor Control Comm. (May 10, 1999), Stark App. No. 1998CA00305, the trial court rejected the City's argument that res judicata barred Assad's application.
 {¶ 8} In its appeal to this court, the City primarily argues that the trial court abused its discretion in affirming the Commission's order because the doctrine of res judicata bars Assad's application. The City argues that the Commission's prior denial of M.U.S.A.'s application to transfer the permits to the One Stop Market bars the Commission's consideration of Assad's later application. *Page 5 
 {¶ 9} The doctrine of res judicata involves both claim preclusion and issue preclusion. Grava v. Parkman Twp., 73 Ohio St.3d 379, 381,1995-Ohio-331. Under the claim-preclusive branch of res judicata, "`[a] final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction * * * is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them.'" Id., quoting Norwood v.McDonald (1943), 142 Ohio St. 299, paragraph one of the syllabus. The issue-preclusive branch of res judicata bars the relitigation of a point of law or fact that was at issue in a former action between the same parties or their privies and that was passed upon by a court of competent jurisdiction. Bell v. Ohio State Bd. of Trustees, Franklin App. No. 06AP-1174, 2007-Ohio-2790, at ¶ 30. Res judicata, whether issue preclusion or claim preclusion, ordinarily applies to those administrative proceedings which are "of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved in the proceeding[.]" Superior's Brand Meats, Inc. v. Lindley (1980),62 Ohio St.2d 133, syllabus; Office of Consumers' Counsel v. Pub. Util.Comm. (1985), 16 Ohio St.3d 9, 10. Nevertheless, the Ohio Supreme Court has recognized the need for flexibility in applying the doctrine to the administrative decision-making process. Superior's Brand Meats at 135.
 {¶ 10} The City spends the bulk of its argument establishing that Assad and M.U.S.A. are privies. However, even assuming that privity exists between Assad and M.U.S.A., we find no abuse of discretion in the trial court's rejection of the City's res judicata argument. *Page 6 
 {¶ 11} By arguing that the Commission's denial of M.U.S.A.'s application bars further applications by either M.U.S.A. or its privies, the City, in essence, argues that, once the Commission denies an application to transfer a permit, res judicata forever bars the applicant from reapplying for such a transfer. The Ohio Administrative Code directly contradicts the City's argument. For example, Ohio Adm. Code 4301:1-1-08 clearly anticipates reapplications for permit transfers but establishes a one-year waiting period after a refusal to transfer: "A permit shall not be * * * transferred to a location for a period of one year following the * * * refusal to * * * transfer * * * any permit under division (A)(2) or (B)(1)(2) of section 4303.292 of the Revised Code."[1] Ohio Adm. Code 4301:1-1-08 also vests the Commission with discretion to waive enforcement of the waiting period when special circumstances warrant.
 {¶ 12} In addition to the Ohio Administrative Code, case law from various courts of this state weighs against acceptance of the City's res judicata argument. In rejecting the City's res judicata argument, the trial court relied on Moffa, in which the Fifth District Court of Appeals considered a scenario similar to that present here. In 1993, Moffa applied for, but was denied, a C1-C2 liquor permit. Moffa exhausted all levels of administrative review and appealed to the Franklin County Court of Common Pleas, which affirmed the denial of her application on August 30, 1995. Six months later, in February 1996, Moffa filed a new application for a C1-C2 liquor permit for the same premises. The Director of the Ohio Department of Liquor Control and the Commission both determined that res judicata barred Moffa's second application. On appeal, the Stark County Court of Common Pleas reversed and remanded the case for a de novo *Page 7 
hearing. The Fifth District Court of Appeals affirmed, stating: "Given the lapse of time and the basis of the decision being environmental impact, we find the decision to dismiss the second application to be contrary to law." Id. The court found res judicata inapplicable to a reapplication where there had been a substantial lapse of time from the prior, adverse decision. The court also noted that a change in circumstances may justify a reapplication at any time.
 {¶ 13} In other administrative contexts, courts have held that res judicata will not bar subsequent applications involving changed circumstances. For example, in Set Products, Inc. v. Bainbridge Twp. Bd.of Zoning Appeals (1987), 31 Ohio St.3d 260, syllabus, the Ohio Supreme Court held that "[r]es judicata will not bar the grant of an application for a [zoning] variance, after denial of a prior application covering the same property, upon a showing of changed circumstances." Although the Supreme Court ultimately determined that the second application inSet Products was not supported by evidence of sufficient changed circumstances, the court was clear that a proper showing of changed circumstances precludes application of res judicata. Similarly, inSchulte v. City of Beavercreek (Oct. 30, 1998), Montgomery App. No. 98 CA 2, the Second District Court of Appeals held that res judicata did not bar a second zoning permit application, based on a substantially different development plan, after denial of an initial application relating to the same property.
 {¶ 14} Here, the Commission denied the first application to transfer the permits to One Stop Market based on testimony offered at the April 20, 2004 hearing, including testimony about the neighborhood's high-crime character, high concentration of drug use, and saturation of liquor permits. However, 20 months elapsed between M.U.S.A.'s *Page 8 
application and Assad's application to transfer the permits, and 23 months elapsed between the Commission's hearings on the two applications. According to Assad, changes in the neighborhood, including a reduction in drug activity, supported his application to transfer the permits. In support of Assad's application, numerous witnesses testified about changes to the neighborhood in the previous two years. Given the significant lapse of time between applications, evidence of changed circumstances, and the fact that the Commission based its denial of the first application on environmental concerns, we conclude, consistent with Moffa, that res judicata did not bar consideration of Assad's application.
 {¶ 15} We next consider whether the trial court abused its discretion in concluding that reliable, probative, and substantial evidence supported the Commission's order. As the objecting party, the City bore the burden of proving as a fact one or more of the grounds set forth in R.C. 4303.292 for denying Assad's application. See City of Euclid v.Liquor Control Comm. (June 9, 1992), Franklin App. No. 92AP-153. As relevant here, R.C. 4303.292 authorizes denial of a request to transfer a permit where the place for which the permit is sought "[i]s so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the * * * transfer of location, or transfer of ownership of the permit and operation under it by the applicant[.]" R.C. 4303.292(A)(2)(c). Additionally, R.C. 4303.292(B)(2) authorizes refusal to transfer a permit where "the number of permits already existent in the neighborhood is such that the * * * transfer of location of a permit would be detrimental to and substantially interfere with the morals, safety, or welfare of the public." The City argues that the *Page 9 
evidence presented at the April 2004 hearing supports denial of Assad's application pursuant to the above-cited sections of R.C. 4303.292.
 {¶ 16} Although the City's attorney opined, at the March 2006 hearing, that there had been no change in the circumstances of the neighborhood since the April 2004 hearing, she presented no evidence to that effect. In fact, in response to her statements regarding the character of the neighborhood, the Commission's chairperson reminded the City's attorney that she was not a sworn witness. The only evidence that the City produced at the March 2006 Commission hearing was the transcript of the April 2004 hearing. While relevant to the character of the neighborhood and the saturation of nearby liquor permits in April 2004, the testimony from the earlier hearing is of little value in determining the character of the neighborhood or saturation of nearby liquor permits nearly two years later, when the Commission considered Assad's application.
 {¶ 17} In contrast to the City, Assad called four witnesses at the March 2006 hearing. Assad's witnesses, who live in the neighborhood of the One Stop Market, testified that drug activity had decreased in the previous two years. Two of the witnesses credited the reduction in drug activity to an increase in civic activism and the activities of an anti-drug task force. One witness testified that, while she was participating in an anti-drug demonstration near the One Stop Market, employees of the One Stop Market participated and supported the demonstration by providing the demonstrators with water. The same witness also testified that Assad does not permit loitering and disperses people hanging around outside the One Stop Market. Having reviewed the testimony presented at the March 14, 2006 hearing, along with the testimony from the April 20, 2004 hearing, we find no abuse of discretion in the trial *Page 10 
court's conclusion that reliable, probative, and substantial evidence supported the Commission's order granting Assad's application.
 {¶ 18} Although the City argues to this court, as it argued to the trial court, that the record contained sufficient evidence to support a denial of Assad's application, the City's position ignores the standards of review applicable to R.C. 119.12 appeals. The common pleas court considers solely whether the Commission's order is supported by reliable, probative, and substantial evidence, and is in accordance with law. R.C. 119.12. Thus, the issue before the trial court was whether the record contained reliable, probative, and substantial evidence supporting the Commission's order to grant Assad's application, not whether the record contained evidence that would have supported denial of that application. This court, in turn, determines only whether the common pleas court abused its discretion. See Roy at 680. Finding no abuse of discretion, we overrule appellant's assignment of error.
 {¶ 19} For the foregoing reasons, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT and BRYANT, JJ., concur.
BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] R.C. 4303.292 sets forth grounds for a refusal to issue, renew or transfer liquor permits. *Page 1